UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT CHOUINARD,

    Petitioner,

v.                                                   CASE NO. 6:15-cv-1661-Orl-37DCI

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____/

**ORDER**

This cause is before the Court on a Petition for Writ of Habeas Corpus ("Petition") filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Thereafter, Respondents filed a Response to the Petition (Doc. 18) in accordance with this Court's instructions. Petitioner filed a Reply to the Response (Doc. 20).

Petitioner alleges one claim for relief in the Petition. For the following reasons, the Petition is denied.

                                            **I.     PROCEDURAL HISTORY**

Petitioner was charged in state court case number 2001-CF-20404 with robbery and in state court case number 2001-CF-32732 with solicitation to commit first degree murder (Doc. 18-1 at 5-6, 18). On August 13, 2002, Petitioner pled guilty to the offenses as charged. The trial court sentenced Petitioner to a ten-year term of imprisonment for the robbery conviction, followed by a ten-year term of probation, and a concurrent five-year term of probation for the solicitation conviction. *Id.* at 8-14, 20-25. Petitioner did not appeal.

Petitioner was released from prison on October 27, 2010. On May 28, 2013, an affidavit for violation of probation ("VOP") was filed. *Id.* at 36-41. The trial court held a VOP hearing on November 21, 2013, and found that Petitioner had willfully violated his probation. *Id.* at 94-95. The trial court sentenced Petitioner to a fifteen-year term of imprisonment on the robbery conviction and a consecutive five-year term of imprisonment on the solicitation conviction followed by two years of community control and five years of probation. *Id.* at 96, 106-21. Petitioner appealed, and the Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam*. *Id.* at 141.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. *Id.* at 145-61. The trial court summarily denied the motion. *Id.* at 163-66. The Fifth DCA affirmed *per curiam*. *Id.* at 189.

## II. LEGAL STANDARDS

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner

3

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.     **Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.  ANALYSIS

Petitioner alleges that trial counsel was ineffective for failing to object to several hearsay statements made by his probation officer (Doc. 1 at 4-5). According to Petitioner the hearsay statements violated his Sixth Amendment right to confront witnesses pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). *Id.* at 5. Petitioner also contends the hearsay testimony was irrelevant to the violations with which he was charged, and the introduction of this evidence only served to prejudice him. *Id.* at 7.

Petitioner raised this claim in his Rule 3.850 motion (Doc. 18-1 at 149-59). The post-conviction court denied the claim, first noting that *Crawford* does not apply to probation revocation proceedings. *Id.* at 165. The post-conviction court further stated that counsel made several objections to some of the hearsay testimony and argued during closing remarks that the hearsay testimony should be discounted. *Id.* The post-conviction court also noted there was no indication that the trial court had considered any irrelevant or unrelated evidence in determining Petitioner had violated his probation or in

5

pronouncing the sentence. *Id.* at 165-66. The post-conviction court concluded that Petitioner had failed to demonstrate deficient performance or prejudice. *Id.* at 166. The Fifth DCA affirmed *per curiam*. *Id.* at 189.

Marlin Jacobs ("Jacobs"), Petitioner's probation officer, testified that on May 23, 2013, he was performing a home visit to Petitioner's apartment that Petitioner rented from his parents. *Id.* at 48-53. Petitioner had recently moved back to the State of Florida, and Jacobs was concerned about problems Petitioner had with his parents. *Id.* at 53-54. Jacobs noticed that Petitioner seemed confused, was avoiding eye contact, and had dark circles under his eyes. *Id.* at 54-55. After Jacobs spoke with Petitioner, Petitioner's mother invited Jacobs into their home to have a private discussion. *Id.* at 55-56. Jacobs stated that Petitioner's parents no longer wanted him to reside on their property and wanted to advise Jacobs regarding his behavior. *Id.* at 56-57. Defense counsel objected to the hearsay testimony, and the trial court overruled the objection. *Id.* at 56.

Jacobs testified Petitioner's parents told him Petitioner was staying up all night, was doing "something" in the garage, had asked them to purchase Sudafed, was acting strangely, and that they had found chemicals such as Coleman fuel and lye in the garage. *Id.* at 57-58. Jacobs also stated that Petitioner's father told him he smelled chemical odors or vapors in the garage. *Id.* at 58. Jacobs observed a Coleman fuel canister, chemical burns, corroded paint, and a chemical odor in the garage that based on his experience, led him to believe that there was an active methamphetamine laboratory set up there. *Id.* at 59-60. Jacobs testified that he had observed Petitioner taking out the trash, and when he checked

6

the trash bag, he found used needles and a spoon containing powdery residue. *Id.* at 60. Defense counsel objected to this statement on relevancy grounds, and the trial court overruled the objection. *Id.* at 60-62.

Jacobs testified that he had gathered enough information to call for assistance, and because he did not want Petitioner to tamper with any possible evidence, he asked Petitioner to go to his car. *Id.* at 62. Jacobs asked Petitioner to place his hands on the hood of Jacobs' car. *Id.* at 63. As Jacobs was speaking with his supervisor and law enforcement, he noticed Petitioner pacing back and forth. *Id.* at 64. Jacobs again instructed Petitioner to place his hands on the vehicle. *Id.* Petitioner advised Jacobs that he had to use the restroom, and Jacobs told Petitioner that he would take him "as soon as [he] got some assistance at the residence." *Id.* According to Jacobs, Petitioner grew more agitated and kept pacing despite Jacobs' instructions to place his hands on the car. *Id.* at 64-65.

Jacobs told Petitioner he was going to place restraints on him, however, when Jacobs grabbed Petitioner's hand, Petitioner "bolted." *Id.* at 65. Jacobs gave several loud commands to "stop" and Petitioner failed to comply, responding, "Shoot me. Shoot me." *Id.* Jacobs followed Petitioner to his room, and he could hear Petitioner banging glassware around. *Id.* Jacobs then observed Petitioner running into the woods. *Id.* Jacobs yelled for Petitioner to stop, Petitioner turned and looked at Jacobs, and then continued running. *Id.* Jacobs could hear the sound of breaking glass. *Id.* at 66.

After several minutes, Petitioner exited the woods. *Id.* at 67. Jacobs observed that Petitioner was "bleeding from his arms, his legs, and . . . even had pretty severe cuts on

feet." *Id.* at 67. At that point, Petitioner complied with Jacobs requests and was restrained. *Id.* Petitioner later refused to submit to a drug test. *Id.* at 67-68. Jacobs and several deputy sheriffs searched Petitioner's room, but there was no evidence of manufacturing methamphetamine. *Id.* at 68. An officer found a plastic bottle in the wooded area that contained methamphetamine oil. *Id.* When Petitioner was questioned about the methamphetamine or possible residue, Petitioner stated, "I'll neither confirm, nor deny." *Id.* at 69-70. Finally, Jacobs testified that Petitioner refused at least three times to comply with his instructions to place his hands on the vehicle, refused the attempt to restrain him, fled after being instructed to stop, prevented Jacobs from entering his room, tampered with evidence, refused to submit to a drug test, and failed to provide truthful answers to his inquiries. *Id.* at 70-71. The trial court concluded that Petitioner had willfully and substantially violated condition nine of his probation by failing to comply with all instructions given by a probation officer and failing to allow a probation officer to visit his home. *Id.* at 94-95.

Petitioner cannot demonstrate that he is entitled to relief on this claim. Counsel initially objected to the hearsay testimony, and the trial court overruled the objection. There was no basis for counsel to continually object to the hearsay when such objections would not have been sustained. Furthermore, the introduction of the hearsay statements did not violate Petitioner's Sixth Amendment rights. Florida and federal courts have held that the introduction of a hearsay statement during probation revocation proceedings does not violate *Crawford*. *See Peters v. State*, 984 So. 2d 1227 (Fla. 2008) (holding that

probation revocation proceedings are not criminal prosecutions, and therefore, the protections of *Crawford* do not apply); *United States v. Johnson*, 349 F. App'x 387, 388-89 (11th Cir. 2009).

Finally, to the extent Petitioner challenges the introduction of irrelevant testimony, his claim fails. Counsel also objected on relevancy grounds, but that objection was overruled. Furthermore, counsel argued that the trial court should not consider the hearsay or irrelevant testimony because Petitioner was not charged with new offenses (Doc. 18-1 at 90-91). Therefore, Petitioner has not demonstrated deficient performance on the part of counsel.

Additionally, the trial court did not solely rely on the hearsay evidence to find Petitioner had violated his probation. Instead, the trial court relied on Jacobs' testimony that Petitioner failed to comply with his commands to find Petitioner had violated his probation. The trial court also stated that it "did not give a whole lot of weight, under the circumstances, to the hearsay given by the parents." *Id.* at 95. Thus, the trial court's decision to find Petitioner in violation of his probation was not improper. *See Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008) (stating that hearsay evidence introduced at a revocation hearing may not form the "sole basis for revocation" of probation).

Consequently, Petitioner cannot show that but for counsel's actions, there is a reasonable probability that the result of the proceeding would have been different. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim is denied pursuant to § 2254(d).

9

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Robert Chouinard (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close the case.

**DONE AND ORDERED** in Orlando, Florida, this 4th day of April, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-3 4/4
Counsel of Record
Robert Chouinard